In the Matter of the Claim of MICHAEL McCORMACK, Appellant, v EASTPORT MANOR CONSTRUCTION et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [796 NYS2d 748]—

Crew III, J.P. Appeal from a decision of the Workers' Compensation Board, filed July 29, 2003, which ruled that claimant violated Workers' Compensation Law § 114-a and disqualified him from receiving wage replacement benefits.

Claimant suffered a work-related accident in May 2001 when he was thrown from the vehicle he was operating and injured, among other things, his head, neck and lower back. At the initial hearing conducted in this matter in April 2002, claimant was asked whether he had returned to work "in any capacity" since the underlying accident, and claimant responded in the negative. Clarifying the phrase "in any capacity," counsel for the employer and the workers' compensation carrier asked claimant whether he had worked "for wages on the books, off the books, volunteer work, anything like that or anything that can be construed as work," and claimant again responded, "No." The Workers' Compensation Law Judge (hereinafter WCLJ) further amplified such questioning, asking claimant whether, since the accident, he "[s]imply stayed at home," to which claimant responded, "Yes." At the conclusion of that hearing, accident, notice and causal relationship were established and an average weekly wage was set.

Based upon information subsequently developed by the car-

rier, including a video surveillance conducted of claimant, the carrier suspended payment of claimant's award and sought rescission thereof upon the ground that claimant falsely testified at the prior hearing regarding his work activities and otherwise exaggerated his injuries. At a hearing conducted in August 2002, claimant "amended" his prior testimony, now conceding that he had worked as an operator of a concrete truck mixer for Casa Concrete for two days in the spring of 2002.[1] Claimant further testified, at a hearing conducted in September 2002, that he owned a fuel oil transport company, although he denied performing any work for that company following his May 2001 accident and could not recall when such company was dissolved. At this same hearing, claimant recalled, for the first time, the volunteer work he performed for at least two days at ground zero following the September 11, 2001 terrorist attacks at the World Trade Center.[2]

Ultimately, in March 2003, the WCLJ found that claimant suffered a mild, permanent partial disability and apportioned a workers' compensation award accordingly. The employer and the carrier appealed the WCLJ's decision, again asserting that claimant testified falsely regarding his work activities and exaggerated his injuries. Following oral argument, a panel of the Workers' Compensation Board found that claimant knowingly made a false statement regarding his work activities for the purpose of obtaining workers' compensation benefits and, in so doing, violated Workers' Compensation Law § 114-a. In reaching this conclusion, the Board panel expressly rejected claimant's assertion that he misunderstood the questions put to him regarding his work activities and concluded that there was no reasonable basis for claimant's denial of his volunteer activities at ground zero. Accordingly, the Board panel rescinded claimant's awards as of April 18, 2002 upon the ground that claimant was disqualified from receiving benefits as a result of his false testimony. This appeal by claimant ensued.

Initially, we reject claimant's contention that the Board panel's failure to include in the record the minutes of the July 2003 oral argument held in this matter constitutes reversible error. As this Court's recent decision in *Matter of Speer v Wackenhut Corp.* (15 AD3d 734 [2005]) makes clear, 12 NYCRR

---

1. Pay stubs produced at a hearing conducted in September 2002 revealed that claimant was paid for pay periods ending March 31, 2002 and April 7, 2002.

2. Notably, claimant was the individual who located the American flag that once flew atop one of the towers and since has been displayed at a number of memorial services and sporting events.

300.13 (d) requires transcription and consideration of minutes from evidentiary hearings, not oral arguments of legal issues presented to the Board itself (*see id.* at 735).

Turning to the merits, the Board panel's finding that claimant violated Workers' Compensation Law § 114-a by knowingly making a false statement regarding his work activities plainly is supported by substantial evidence in the record. Workers' Compensation Law § 114-a (1) provides, in relevant part, as follows: "If for the purpose of obtaining compensation . . . , or for the purpose of influencing any determination regarding any such payment, a claimant knowingly makes a false statement or representation as to a material fact, such person shall be disqualified from receiving any compensation directly attributable to such false statement or representation. In addition, as determined by the board, the claimant shall be subject to a disqualification or an additional penalty up to the foregoing amount directly attributable to the false statement or representation." As noted previously, claimant testified on April 18, 2002, less than two weeks after the date of his last paycheck from Casa Concrete, that he had not performed work of any type and had, instead, "[s]imply stayed at home." Claimant's present assertions—that he either did not understand the questions posed to him by counsel regarding his work activities and/or technically did not testify falsely in that he never actually returned to work, he merely attempted to return to work— are utterly unpersuasive. We also agree with the Board panel that given the admittedly laudable nature of the work that claimant performed at ground zero in the aftermath of the terrorist attacks, it is highly unlikely that this event simply slipped his mind when he initially was questioned at the April 2002 hearing regarding any volunteer work he had performed since his accident in May 2001. In short, we have no quarrel with the Board panel's finding that claimant offered false testimony for the purpose of obtaining benefits in violation of Workers' Compensation Law § 114-a.

We do, however, agree with claimant that this matter must be remitted to the Board inasmuch as the record does not reveal the basis upon which the penalty of disqualification was imposed. As the Court of Appeals instructs: "In order for a reviewing court to assess whether [Workers' Compensation Law] section 114-a (1) has been properly applied, the administrative record must, at a minimum, reflect whether a mandatory or discretionary penalty was imposed. If mandatory, the record must demonstrate a link between the false statement or representation and the forfeited compensation to show that the

compensation was 'directly attributable' to the false statement or representation. If the Board exercises its discretionary power, the record must reflect that the additional penalty does not exceed the mandatory penalty, or, in the case of disqualification, provide some basis for appellate review" (*Matter of Losurdo v Asbestos Free*, 1 NY3d 258, 266-267 [2003]). Simply put, the Board panel's decision here does not meet that standard, as it is unclear whether the penalty imposed was mandatory or discretionary in the first instance. Moreover, regardless of the basis for the imposition of the penalty, the required elaboration demonstrating either the "link" between the false statement and the forfeited compensation or the rationale for the imposition of a discretionary penalty is absent. Accordingly, the Board panel's decision is reversed and this matter is remitted to the Board for further development of the underlying decision in this regard (*see Matter of Bowes v Gulinello's Town & Country*, 3 AD3d 805, 806 [2004]).

Peters, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.